**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **COLLEEN LORD, ET AL.** | : | **CIVIL ACTION NO. 3:22-CV-0322(VLB)** |
| *Plaintiff* | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CARLOS PADRO, ET AL.** | : | |
| *Defendants* | : | **May 11, 2023** |

<u>**MEMORANDUM IN SUPPORT OF ATTORNEY GENERAL WILLIAM TONG'S**</u>
<u>**MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**</u>

Pursuant to F.R.C.P. 45(d), William Tong, the Attorney General of the State of Connecticut ("the Attorney General"), hereby moves to quash Plaintiffs' subpoena seeking to compel his deposition testimony and production of documents on May 15, 2023 at 10:00 a.m. *See* Subpoena (copy attached hereto as Exhibit A). Also, pursuant to F.R.C.P. 26(c), the Attorney General seeks a protective order preventing the parties from issuing him any further subpoenas without prior court approval.

Plaintiffs' subpoena is nothing more than an improper backdoor attempt to delve into defense counsels' analysis and strategy in this case. As Plaintiffs are well-aware, the Attorney General has no personal, first-hand knowledge of any of the alleged facts in the Amended Complaint. Rather, he is the elected official tasked by the Connecticut General Assembly with, among other duties, representing the State and its officers and employees in litigation. Conn. Gen. Stat. §§ 3-125, 5-141d. In furtherance of those duties, the Attorney General is providing a defense to fifteen of the sixteen defendants in this case. Plaintiffs

attempt to get past this clear barrier to deposing the Attorney General by claiming they are entitled to the facts that the Attorney General relied upon in making his determination whether to represent the defendants in this case.   The Attorney General has no duty to explain his basis for declining to represent a state officer or employee.   Conn. Gen. Stat. § 5-141d.   Indeed, the Second Circuit has held that the Attorney General has absolute immunity for his decisions not to represent a state officer or employee. *Mangiafico v. Blumenthal*, 471 F.3d 391, 397 (2d Cir. 2006).

Setting aside Plaintiffs' misguided assertion that they can delve into the Attorney General's analysis of this case because he declined to represent one defendant, Plaintiffs' attempt to require the Attorney General to testify is barred by the Eleventh Amendment.   Even if it were not, Plaintiffs cannot establish the extraordinary circumstances that would justify deposing the Attorney General of the State of Connecticut.   Nor can they establish that the circumstances that would require this Court to permit them to depose the Attorney General while he is representing multiple defendants in this case, particularly considering the high risk of encountering privileged information.   Finally, permitting any portion of the deposition to go forward would impose an undue burden on the Attorney General.   Therefore, this Court should prohibit Plaintiffs from using this deposition to improperly interfere with the Attorney General's ability to carry out his duties to the State and to his clients in this case by quashing Plaintiffs' subpoena and prohibiting the parties from issuing any future subpoenas to the Attorney General without the Court's permission.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

### A.       RELEVANT PROCEDURAL HISTORY

Plaintiffs, on behalf of the estate of Carl Talbot, have brought a lawsuit against Carlos Padro and fifteen other employees of the Connecticut Department of Correction, pursuant to 42 U.S.C. § 1983 alleging that the defendants violated the Eighth and Fourteenth Amendments by using excessive force on Talbot, failing to provide proper medical care after using excessive force, failing to intervene to prevent the excessive use of force.  Amended Compl. (ECF No. 60). They further allege claims of Connecticut common law assault and battery against Padro and several others and intentional infliction of emotional distress against Padro.  *Id.*  Upon receipt of the Complaint, the Attorney General, as required by Conn. Gen. Stat. § 5-141d, determined based upon "our investigation of the facts and circumstances of [the] alleged conduct"[1] that it would be inappropriate to provide representation to Padro.  Ex. A p.4.  The Attorney General notified Padro of this determination via letter.  *Id.*  The Attorney General, through his subordinates, appeared on behalf of the other fifteen defendants. *See* ECF Nos. 39, 40, 45, 46, 47, 48, 75.

Discovery in the case has been ongoing.  Plaintiffs, and Padro, provided notices of deposition to the assistant attorneys general appearing in this case for a deposition of the Attorney General in March 2023.  Undersigned counsel corresponded with counsel for Plaintiffs and Padro in April to clarify the scope and requirements of the proposed deposition.  Counsel for Plaintiffs then served

a subpoena on the Attorney General on April 26, 2023, for his appearance and testimony on May 15, 2023.[2]  Ex. A.

### B.     THE INFORMATION AND RECORDS SOUGHT BY PLAINTIFFS

Plaintiffs' subpoena is silent as to the specific topics they intend to question the Attorney General.  Through the subpoena, however, Plaintiffs seek "[a]ll documents (print or electronic) related to 'our [the Attorney General's Office's] investigation of the facts and circumstances of [Padro's] alleged conduct' referenced in Exhibit A" to the subpoena.  Ex. A p.3 (Schedule A).  In response to a request for information regarding the topic of the deposition, Plaintiffs, through their counsel, provided to undersigned counsel a letter explaining the topic and his purpose for deposing the Attorney General.  *See* Laske Letter Apr. 12, 2023 (copy attached hereto as Exhibit B).

As best as undersigned counsel can determine from the letter, Plaintiffs seek to question the Attorney General regarding his determination that Padro is not entitled to representation by the Attorney General, pursuant to Conn. Gen. Stat. § 5-141d, but that the other defendants were entitled to representation.  The letter reflects that because Plaintiffs would not have reached the same conclusion as the Attorney General regarding representation, they wish to inquire as to the basis for his conclusion.  Plaintiffs presume "the Attorney General's Office- representing the other defendants- will point at Lt. Padro (in their defense

---

[1] From the context of the letter, it is clear that "our" refers to the Office of the Attorney General.  Ex. A p.4 ("The Office of the Attorney General has received a copy of a Complaint.").

[2] Padro has not served a subpoena or provided an updated notice of deposition. The Attorney General, therefore, directs his motion to Plaintiffs.  However, he

of [Plaintiffs'] lawsuit) and state to the jury why their defendants should be treated factually differently from Lt. Padro," Ex. B. p.4, and believe they are entitled to seek discovery from the Attorney General "into the factual defenses upon which the State will rely in its defense of these other Correctional Department personnel." *Id.* Although couched as a request regarding the "factual basis," what Plaintiffs are really seeking is to delve into the manner that the Attorney General, and those in his office working on his behalf, interpreted the information they gathered. In other words, in addition to deposing the parties to this case and other fact witnesses from the Department of Correction and seeking written discovery from those parties and fact witnesses, Plaintiffs assert they are entitled to depose the constitutional officer of the State of Connecticut tasked with representing the State, and its officers and employees, regarding the steps he took after the filing of this case and the conclusions he reached based upon those steps. This is clearly improper.

## II.     THIS COURT SHOULD QUASH THE SUPOENA AND ISSUE A PROTECTIVE ORDER PROHIBITING ANY FUTURE SUBPOENA OF THE ATTORNEY GENERAL ABSENT THE COURT'S PERMISSION.

### A.     THE ELEVENTH AMENDMENT PROHIBITS PLAINTIFFS FROM REQUIRING THE ATTORNEY GENERAL, WHO IS NOT A PARTY TO THIS CASE, TO TESTIFY.

Where the State, and its officers, would be entitled to immunity pursuant to the Eleventh Amendment if named as a defendant, that immunity extends to third-party subpoenas. That principle applies equally to the Attorney General here, who is not a party to the case and Plaintiffs are seeking to question him regarding

---

presumes that if he were deposed by Plaintiffs, counsel for Padro would avail himself of the opportunity to question him.

a determination he made for which he has absolute immunity.

In the Second Circuit, federal agencies are entitled to sovereign immunity and are not required to comply with Rule 45 subpoenas. *See United States EPA v. General Electric*, 197 F.3d 592 (2d Cir. 1999) ("the United States and its agencies may not be subject to judicial proceedings, including those implicit in subpoena compliance, unless there has been an express waiver of [sovereign] immunity"). Likewise, courts in the Second Circuit have held that tribal sovereign immunity shields tribes from Rule 45 subpoenas. *See Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 87 (S.D.N.Y. 2002) (explaining that sovereign immunity bars Rule 45 subpoenas served on federal agencies because they "compel the [agency] to act" – and consequently, the same rule should apply in the tribal immunity context).

With respect to state sovereign immunity, the Second Circuit has not had occasion to decide whether the same rule should apply to the State pursuant to the Eleventh Amendment.  The sole case in this district to reach the issue held to the contrary.  *Jackson v. AFSCME Local 196*, No. 3:07cv0471 (JCH) (HBF), 2008 U.S. Dist. LEXIS 34092, *7 (D. Conn. April 25, 2008); *see Madigan v. Bronstein*, 2018 U.S. Dist. LEXIS 62288, *2 n.2 (S.D.N.Y. Apr. 12, 2018) ("The applicability of sovereign state immunity to a non-party subpoena appears unsettled in this Circuit, and the lone decision from this Circuit of which this Court is aware held that the Eleventh Amendment does not apply to discovery subpoenas:")(citing *Jackson v. AFSCME Local 196*)).  However, the Fifth Circuit recently held that the same principles that support the conclusion that sovereign immunity bars third-

6

party subpoenas against federal agencies and tribal entities also support the conclusion that the Eleventh Amendment and state sovereign immunity bars third-party subpoenas against the State. *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022). Although both decisions are merely persuasive on this Court, the Fifth Circuit's analysis is more thorough and more consistent with the broader Eleventh Amendment doctrine.

Magistrate-Judge Fitzsimmons ruled 15 years ago that state agencies in Connecticut are not entitled to immunity from Rule 45 subpoenas. Specifically, in *Jackson v. AFSCME Local 196*, 2008 U.S. Dist. LEXIS 34092, at *7, a pro se plaintiff filed a complaint against her former labor union claiming violations of a state duty of fair representation and served a non-party subpoena on the Director of the Connecticut Office of Labor Relations. *Jackson*, 2008 U.S. Dist. LEXIS 34092, at *1. The Director moved to quash based on Eleventh Amendment immunity, among other arguments, and the court denied the motion in part, holding that although sovereign immunity bars third-party subpoenas against the federal government, Eleventh Amendment immunity did not apply to third-party subpoenas against a State. *Id.* at *7. The court based its conclusion on a narrow view of the purpose of the Eleventh Amendment, "to prevent federal court judgments that would have to be paid out of a state's treasury," relying on *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994) for the proposition that "the vulnerability of the state's purse [is] the most salient factor in Eleventh Amendment determinations." *Jackson*, at *4. Focusing on the fiscal impact of a subpoena against a State officer in her official capacity, the Court found that "the

7

Eleventh Amendment is not implicated because the persons proceeded against are not the state, but rather private actors, and any judgment would not be paid out of the state's treasury." *Id.* For further support, the court relied upon *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 699 (1982), in which the Supreme Court approved service of process on state officials to secure artifacts held by them, which the court noted is similar to a production of state records. *Id.* at * 6.

In focusing on the fiscal protections of the Eleventh Amendment, the court failed to consider the broader purpose of the Eleventh Amendment. Although it is true that "the vulnerability of the state's purse [is] the most salient factor in Eleventh Amendment determinations" *Hess*, 513 U.S. at 47 — it is not the only factor. *See Feeney v. Port Authority Trans-Hudson Corp.*, 873 F.2d 628, 631 (2d Cir. 1989) ("whether liability will place the state treasury at risk, although not exclusively determinative, is the single most important factor" in assessing whether to extend sovereign immunity to a state entity). Other factors in this analysis are whether a judgment would interfere with public administration or if the effect of the judgment would restrain the government from acting or compel it to act. *Dugan v. Rank*, 372 U.S. 609, 620 (1963).

Further, the court's reliance on *Treasure Salvors* was misplaced. Rather than seeking a deposition or documents from the State, in *Treasure Salvors* the service of process was against state officials who were alleged to have acted ultra-vires by failing to surrender certain artifacts. *Treasure Salvors*, 458 U.S. at 687. As the Supreme Court explained, the "Eleventh Amendment gives no

immunity to officers or agents of a State in withholding the property of a citizen without the authority of law." *Id.*(quoting *Tindal v. Wesley*, 167 U.S. 204, 222 (1897)). There is no claim of ultra-vires action in this case.

Last September, the Fifth Circuit held that state sovereign immunity bars Rule 45 non-party subpoenas served on state officials. *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022). In *Russell*, the plaintiffs sued a state county to enjoin enforcement of a felony bail system and served Rule 45 non-party subpoenas on county district judges seeking information about the system after dropping them as named defendants. *Id.* at 510. The voluntary dismissal of the judges as party-defendants followed a Fifth Circuit decision holding that claims against the judges were for actions taken on behalf of the state and, therefore, were barred by state sovereign immunity. *Id.*

The judges moved to quash the subpoenas based on Eleventh Amendment state sovereign immunity, among other arguments, and the U.S. District Court denied the motion in part. *Id.* at 511-12. On appeal, the Fifth Circuit reversed, holding that because county district court judges were state officials acting in their official capacities—the subpoenas were actually served against the state, and impermissibly implicated sovereign immunity. *Id.* at 512-513. As the court explained, sovereign immunity respects a broader berth than simply where the state is sued as a defendant, as it also applies where a state's "sovereign prerogatives are subjected to individuals through coercive judicial process." *Id.* at 513-14 (citing *Ex parte Ayers*, 123 U.S. 443, 505 (1887)). "These interests— the sovereign's dignity and authority over its prerogatives- are no less interesting

when a sovereign is served with a subpoena duces tecum instead of a complaint." *Id.* at 515.  By compelling a state to produce papers, it subjects a sovereign to such coercive process.  *Id.* (citing *Seminole Tribe of Fla. V. Florida*, 517 U.S. 44, 58 (1996)).  "It 'expend[s]. . . on the public treasury or domain and interferes with the public administration.'" *Id.* (citing *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). As such, "compelled compliance . . . violates the 'inviolable sovereignty' retained by the states in the Constitution's wake." *Id.* (citing *Alden v. Maine*, 527 U.S. 706, 715 (1999)).  "[S]overeign immunity is an immunity from suit (including discovery), not just liability." *Id.* at 514 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993).

To reinforce its decision, the Fifth Circuit cited cases from the Ninth, Seventh, Fourth, and Second Circuit, as well as the U.S. District Court for the District of Columbia, holding that sovereign immunity applies to non-party subpoenas directed at federal agency officials. *Russell*, 49 F.4th at 515-517. *See id.* at 516 (citing *United States EPA v. GE*, 197 F.3d 592 (2d Cir. 1999)) ("the United States and its agencies may not be subject to judicial proceedings, including those implicit in subpoena compliance, unless there has been an express waiver of [sovereign] immunity").  *See also id.* at 515 n.9 (citing *Sharon Lease Oil Co. v. F.E.R.C.*, 691 F. Supp. 381, 383 (D.D.C. 1988) (sovereign immunity bars third-party subpoenas against federal officials because "the essential nature and effect of the subpoena will interfere with the public administration")).

The Fifth Circuit also cited cases from the Eighth and Tenth Circuit holding that tribal sovereign immunity bars non-party subpoenas and noted that the Eighth Circuit specifically refused to follow prior precedent denying state sovereign immunity for non-party subpoenas in federal court. *Russell*, 49 F.4th at 518 (citing *Attel Communications, LLC v. DeJordy*, 675 F.3d 1100, 1105 (8th Cir. 2012)).  With respect to the Tenth Circuit, the Fifth Circuit quoted that court's language to emphasize that tribes are immune from "suit" – which includes judicial process, "and a subpoena duces tecum is a form of judicial process." *Russell*, 49 F.4th at 518 (quoting *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1160 (10th Cir. 2014)). Further, the Fifth Circuit quoted dicta from the Tenth Circuit which pointed to an equivalency between tribal sovereign immunity and state sovereign immunity.  *See Id.* ("'applying tribal immunity to bar the instant subpoena does not require holding the [t]ribe is entitled to any broader immunity than the States' because 'under our binding precedent. . . the Eleventh Amendment may well shield a state agency from discovery in federal court.'") (quoting *Bonnet*, 741 F.3d at 1161)).  As the Fifth Circuit observed, "this is not to say that state sovereign immunity is in every respect identical to federal or tribal immunity.  But where these immunities apply, each provides the same 'common-law immunity from suit traditionally enjoyed by sovereign powers.'"  *Russell*, 49 F.4th at 518 (quoting *Santa Clara Pueblo . Martinez*, 436 U.S. 49, 58 (1978)).

This Court should adopt the well-reasoned analysis of the Fifth Circuit regarding third-party subpoenas of State officers.  Pursuant to that analysis, Plaintiffs' subpoena of the Attorney General is clearly barred by the Eleventh

Amendment.  Plaintiffs seek money damages from sixteen defendants for actions Plaintiffs allege occurred in March 2019.  Am. Compl.  All sixteen defendants only are named in their individual capacities.  *Id.*  Neither the State nor a State Agency is a defendant.  Although the Attorney General, pursuant to statute, is providing a defense for fifteen of the defendants, the Attorney General is not a party to the case.  Indeed, he had no personal involvement in the incident alleged in the Amended Complaint.

Through their subpoena, Plaintiffs seek to question the Attorney General regarding his decision, pursuant to Conn. Gen. Stat. § 5-141d, to provide representation to sixteen defendants in this case, but to decline to represent Padro.  Thus, Plaintiffs seek to question the Attorney General on a decision he made in his official capacity and the facts he found determinative for that decision.

Had Plaintiffs attempted to bring a claim against the Attorney General in his official capacity related to his representation determination, the claim would be barred by the Eleventh Amendment.  *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 102 (1984) (The Eleventh Amendment bars any claim against the State "regardless of whether it seeks damages or injunctive relief.")  For a state to be subject to suit in federal court, the state must expressly and unambiguously waive its sovereign immunity, or Congress must clearly and unmistakably express its intention to abrogate the state's sovereign immunity pursuant to the Fourteenth Amendment.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304-305 (1990).   No such waiver or express abrogation would apply to the

Attorney General's representation determination in this case.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64-66 (1989) no waiver for § 1983 claim); *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 166 (2d Cir. 2013) (exception exists for § 1983 claims seeking prospective injunctive relief, but only to prevent an ongoing constitutional violation).

The Eleventh Amendment is immunity not just from liability, but also from suit.  *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 116 (2d Cir. 2016).  Thus, it would stand as a bar to discovery in a claim brought against the Attorney General for his representation determination.  For the reasons laid out by the Fifth Circuit, the Eleventh Amendment, therefore, also serves to bar discovery against the Attorney General in this case, when he is not a party.[3]

This Court also may apply the logic underlying the Eleventh Amendment bar to third-party subpoenas to any possible assertion that Plaintiffs are seeking to depose the Attorney General in his individual capacity.  The Attorney General has absolute immunity for his representation determinations made pursuant to § 5-141d.  *Mangiafico v. Blumenthal*, 471 F.3d at 397.  His absolute immunity would

---

[3] The Attorney General acknowledges that the State did not oppose Plaintiffs deposing other state employees who were not parties in this case.  The State's choice to waive the Eleventh Amendment for depositions of individuals who were fact witnesses in this case, however, does not waive the Eleventh Amendment as to all state officers and employees.  *See Wis. Dep't of Corr. V. Schacht*, 524 U.S. 381m 389 (1998) ("The Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so.").  That is particularly true here, where the Attorney General differs from other third-party witnesses because he has no first-hand personal knowledge related to the claims raised in the Amended Complaint and is an elected constitutional officer of the State of Connecticut.

properly be a basis for dismissal of an individual capacity claim brought against him. *Id.* (affirming dismissal based on absolute immunity). Permitting Plaintiffs to use a third-party subpoena to inquiry into the basis of a decision for which the Attorney General has absolute immunity would no les interfere with his ability to carry out his duties regardless of whether Plaintiffs seek to do so in his official or individual capacity. Therefore, the subpoena against the Attorney General is barred because of both the Eleventh Amendment and absolute immunity and should be quashed.

**B.     PLAINTIFFS CANNOT SATISFY THE EXTRAORDINARY CIRCUMSTANCES THAT WOULD JUSTIFY DEPOSING THE ATTORNEY GENERAL, A HIGH-LEVEL GOVERNMENT OFFICIAL.**

Even if this Court concludes that the Eleventh Amendment does not bar deposing the Attorney General in this case, which it should not, no extraordinary circumstances exist that would permit Plaintiffs to depose the Attorney General, the elected constitutional officer tasked by statute with representing the State of Connecticut, including its officers and employees. *See* Conn. Gen. Stat. § 3-125 (duties of the Attorney General). Plaintiffs base their subpoena on two incorrect assertions: (1) the parties are entitled to an explanation for the Attorney General's decision to represent all defendants except for Padro, and (2) because Plaintiffs would have reached a different conclusion regarding representation, the Attorney General must have based his decision on information not known to any other party. Both assertions are incorrect.

"[A] high-ranking government official should not- absent exceptional circumstances- be deposed or called to testify regarding the reasons for taking official action, 'including the manner and extent of his study of the record and his

consultation with subordinates.'" *Lederman v. N.Y. City Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013) (quoting *United States v. Morgan*, 313 U.S. 409, 422 (1941)). "This is so because 'high-ranking government officials . . . have greater duties and time constraints than other witnesses.'" *In re United States v. DOC*, Nos. 18-2856, 18-2857, 2018 U.S. App. LEXIS 32875, *5 (2d Cir. Oct. 9, 2018) (quoting *Lederman*, 731 F.3d at 203).   "Thus, to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition" including (1) "that the official has unique first-hand knowledge related to the litigated claims;" and (2) "that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Burns v. Rovella*, No. 3:19CV00553(JCH), 2020 U.S. Dist. LEXIS 261540, *4 (D. Conn. Feb. 19, 2020) (*Hall, J.*) (quoting *Lederman*, 31 F.3d at 203).  Plaintiffs cannot establish either of these exceptional circumstances.

Plaintiffs do not allege, because they cannot, that the Attorney General has any first-hand knowledge of the facts and circumstances that are alleged in the Amended Complaint.  Plaintiffs' allegations relate to conduct by Department of Correction's staff at a Department of Correction facility with an individual in the Department of Correction's custody.  Plaintiffs do not claim that the Attorney General witnessed any of the alleged actions or their aftermath.   Instead, Plaintiffs seek the information that was gathered <u>after </u>the Attorney General received the Complaint as part of his investigation into the claims alleged.  Thus, they seek information that the Attorney General's Office gathered from other sources and considered in reaching the representation determinations in this

litigation.  In other words, they seek to question the Attorney General on "'the manner and extent of his study of the record and his consultation with subordinates.'"  *Lederman*, 731 F.3d at 203 (quoting *United States v. Morgan*, 313 U.S. at 422).  This is precisely the type of inquiry that the Second Circuit held was improper.  *Id.*

Thousands of cases are brought against Connecticut state officers and employees each year.  *See, generally*, Attorney General Annual Report Fiscal Year 2021-2022 p.3, available at https://portal.ct.gov/-/media/AG/About-Us/AnnualReport2021-2022.pdf (last viewed May 10, 2023) (7,619 trial court cases initiated in 2021-2022 fiscal year involving Attorney General's Office).  If the Attorney General were required to provide deposition testimony regarding the factual basis for each representation determination he makes each year, it would impose an extraordinary burden on him and substantially interfere with his ability to timely carry out his duties, including representing the State in all litigation.  Conn. Gen. Stat. § 3-125.

Plaintiffs also cannot establish that the Attorney General possesses "necessary information [that] cannot be obtained through other, less burdensome or intrusive means."  *Burns v. Rovella*, 2020 U.S. Dist. LEXIS 261540, at *4.  First, as will be discussed in greater detail in Section C.3, the manner in which the Attorney General, personally and through his subordinates, gathered, analyzed, and reached conclusions regarding representation in this case is clearly protected by work-product, attorney-client, and deliberative process privileges.  To the extent that Plaintiffs seek the records and information that was

provided to the Attorney General's Office by others, Plaintiffs cannot establish that they are unable to obtain such records and information through other, less burdensome and intrusive means.

Plaintiffs by their own admission have in their possession "numerous 'investigations' regarding this matter."  Ex. B p.2.  Those include video of the interactions between Talbot and defendants that form the basis for the Amended Complaint.  *Id.*  They possess the investigative reports from both the Department of Correction and the Connecticut State Police.  *Id.* p.3.  They have had the opportunity to depose the defendants in this case and seek written discovery from them.  They also have deposed other fact witnesses from the Department of Correction.

Plaintiffs' sole basis for asserting that the information and records in the possession of the Attorney General are different than what they already have in their possession, or have ready access to, is that they do not agree with the conclusion that the Attorney General reached in his representation determination based on that information.   In other words, because the Attorney General declined to represent Padro, while representing the other defendants, he must have based his decision on information that Plaintiffs, and Padro, have not had access to.  It is a principle so fundamental that it requires no citation that the parties in litigation, and the attorneys who represent them, believe that different conclusions should be drawn from the same evidence.  That the Attorney General reached a conclusion that Plaintiffs would not have reached does not establish that he based that decision on information made available only to him.  Therefore,

Plaintiffs cannot establish the exceptional circumstances necessary to depose the Attorney General of the State of Connecticut.

**C.    THE RELEVANT FACTS WEIGH DECISIVELY AGAINST DEPOSING THE ATTORNEY GENERAL, THE ATTORNEY REPRESENTING THE STATE AND ITS OFFICERS AND EMPLOYEES.**

The Attorney General is not merely a high-ranking government official.  He is also the attorney tasked by statute with representing the State, and its employees, in litigation.  §§ 3-125, 5-141d.  The Attorney General is authorized by statute to use assistant attorneys general to help him carry out his duties.  § 3-125.   Thus, although the Attorney General does not have an individual appearance in this case, the assistant attorneys general who have appeared in the case and are representing all the defendants except Padro, carry out the Attorney General's statutory duties on his behalf.  As such, it is ultimately the Attorney General who represents fifteen defendants in this case.

"Generally, within the Second Circuit, depositions of opposing counsel are disfavored, although they are not categorically prohibited."  *Luck v. McMahon*, No. 3:20-cv-00516(VAB), 2021 U.S. Dist. LEXIS 177166, *76 (D. Conn. Sept. 17, 2021) (*Bolden, J.*) (quoting *New York Indep. Contractors Alliance, Inc. v. Highway, Road, & Street Constr. Lab*, No. 07-cv-1830 (ERK) (VVP), 2008 U.S. Dist. LEXIS 95328, *6 (E.D.N.Y. Nov. 24, 2008)) (quotation marks omitted).  "Depositions of the attorney usually merely embroil the parties and the court in controversies over the attorney-client privilege and more important, involves forays into the area most protected by the work-product doctrine-that involving an attorney's mental impressions or opinions."  *Id.* (quoting *New York v. Solvent Chem. Co.*, 214 F.R.D. 106, 111 (W.D.N.Y. 2003)) (quotation marks omitted).

18

"In determining whether a deposition of opposing counsel is appropriate, the Court is guided by dicta in the Second Circuit's opinion in *In re Subpoena issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2007)." *Id.*   Pursuant to *Friedman*, courts should take a "flexible approach" taking into consideration all of the relevant facts and circumstances to determine whether a proposed deposition would entail "an inappropriate burden or hardship" on an attorney. *Id.* (quoting *Friedman* at 72).  Among the considerations the court noted in *Friedman* are: "(1) the need to depose an opposing counsel; (2) the lawyer's role in connection with the matter on which discovery is sought and in relation to pending litigation; (3) the risk of encountering privilege and work product issues; and (4) the extent of discovery already conducted." *Id.* at 77 (citing *Friedman*, at 72).  The relevant factors weigh decisively against permitting Plaintiffs to depose the Attorney General in this case.  *Friedman*, 350 F.3d 65; *see also Luck v. McMahon*, 2021 U.S. Dist. LEXIS 177166, at *76-*80 (applying *Friedman* factors and denying motion to compel deposition of attorney); *Doe v. Town of Greenwich*, No. 3:28CV01322(KAD), 2020 U.S. Dist. LEXIS 84482, *12-*20 (D. Conn. Jan. 10, 2020) (*Dooley, J.*) (same); *Dominion Res. Servs. v. Alstom Power Inc*., No. 3:16CV00544(JCH), 2017 U.S. Dist. LEXIS 119274, *4-*22 (D. Conn. July 31, 2017) (*Hall, J.*) (same).   Each of these factors weigh against permitting Plaintiffs to depose the Attorney General.

### 1.   PLAINTIFFS CANNOT ESTABLISH A STRONG NEED TO DEPOSE THE ATTORNEY GENERAL.

In seeking to depose the Attorney General, Plaintiffs seek "discovery into the factual defenses upon which the State will rely in its defense of [the State's

clients]." **Ex. B p.4.  Plaintiffs assert that they "need to know the factual basis on the State's [hypothetical] argument to the jury that 'You need to blame Padro, not our employees.'"  *Id.*  According to Plaintiffs, the "only source to discover the basis of the facts upon which the State's defense of these other employees/defendants is to depose the administrative fact finder of those facts- and that is Attorney General Tong, who disclosed in his March 17, 2022, letter that <u>he</u> arrived at those factual conclusions."  *Id.* (emphasis in original).  Plaintiffs are incorrect that the Attorney General is the only source of information regarding the factual basis for his Office's defense of his clients in this case.**

**First, Plaintiffs misstate the nature of the Attorney General's determination not to represent Padro, while providing for the defense of the other defendants in this case.  The Attorney General's determination not to represent Padro cannot be separated from his role as attorney for the State of Connecticut and its employees.  By statute, the Attorney General must provide a defense to state officers and employees acting in the course of their employment or discharge of their duties except "whenever the Attorney General, based on his investigation of the facts and circumstances of the case, determines that it would be inappropriate to do so."  § 5-141d(b).  The statute does not state that the Attorney General must conduct an investigation into the facts and circumstances of a case for the<u> purpose </u>of deciding whether to decline to represent a state officer or employee.  It simply states that he may decline to do so "based upon his investigation of the facts and circumstances of the case."  Nothing in the statute prohibits the Attorney General from declining to provide a defense for a state**

officer or employee after having appeared in the case for the individual if he determines based upon ongoing investigation into the facts and circumstances of the case that it would be inappropriate to continue to provide a defense to the individual. Thus, it is inaccurate to portray the Attorney General's representation determination as "administrative" and separate from his representation of the State generally or the other defendants in this case.

Second, Plaintiffs have not, and cannot, establish that the Attorney General is the only source for discovery regarding the facts of the case. As previously discussed, he was not a fact witness to the alleged events in the Amended Complaint. The only knowledge Plaintiffs allege that he possesses is information that was gathered from other sources. Plaintiffs cannot establish that they cannot secure the same information from the same sources through discovery.

Third, Plaintiffs do not have a need to inquire as to the recommendations that were made to the Attorney General or the conclusions he reached based upon the Office's investigation into this case. What Plaintiffs plainly seek is not factual information, but an explanation as to which evidence the Attorney General will present to the jury and what arguments he will make to provide a defense for his clients. There is no basis for this Court to conclude that it is either appropriate or necessary for the Plaintiffs to have this information.

### 2.   THE ATTORNEY GENERAL REPRESENTS FIFTEEN DEFENDANTS IN THIS CASE.

As previously discussed, although the Attorney General does not have an individual appearance in this case, the assistant attorneys general who have appeared in the case and are representing all the defendants except Padro, carry

out the Attorney General's statutory duties on his behalf.  Indeed, the Attorney

General's name appears above the signature block for each pleading filed on

behalf of his clients in this case.  It is ultimately the Attorney General who

represents the other defendants in this case.  "Thus, there is a clear risk of

disrupting the litigation and chilling the relationship between counsel and

client[s]" where the Attorney General has been trial counsel for his clients

throughout this litigation.  *Dominion Res. Servs. v. Alstom Power Inc.*, 2017 U.S.

Dist. LEXIS 119274, at *13.

### 3.     THE RISK OF ENCOUNTERING PRIVILEGE AND WORK PRODUCT ISSUES IS AN ALMOST CERTAINTY.

Inquiry into the "factual basis" for the Attorney General's representation

determination by Plaintiffs, would necessarily involve the steps the Attorney

General, and other attorneys in his Office, took to investigate the claims in the

complaint, the information that they sought, communications and records that

were provided in response, and their analysis and impressions of the facts and

claims in this case.   There is an extremely high risk that such inquiry will run

afoul of numerous privileges and doctrines including work product, attorney-

client, and deliberative process privileges.

"The work-product doctrine, codified for the federal courts in Federal Rule

of Civil Procedure 26(b)(3), is intended to preserve a zone of privacy in which a

lawyer can prepare and develop legal theories and strategy with an eye toward

litigation, free from unnecessary intrusion by his adversaries." *Luck v. McMahon*,

2021 U.S. Dist. 177166, at *52 (citing *United States v. Adlman*, 134 F.3d 1194, 1196

(2d Cir. 1998)).  "Analysis of one's case in anticipation of litigation is a classic

example of work product, and receives heightened protection under Federal Rule of Civil Procedure 26(b)(3)." *Id.* (quoting *Adlman*, 134 F.3d at 1196-97) (quotation marks omitted).  "To invoke this privilege, a party generally must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." *United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).

Plaintiffs seek information and records that were gathered and created by the Attorney General and attorneys in his Office after the Attorney General had received a copy of the Complaint in this case.  Ex. A p.4.  They seek them to glean the "factual basis" for the defense they anticipate the Attorney General will raise on behalf of his clients.  The work-product doctrine clearly prohibits inquiry into "analysis of [this] case in anticipation of litigation." *Luck*, at *52.  Therefore, the risk is high of encountering work-product privilege issues. *Dominion Res. Servs.*, 2017 U.S. Dist. LEXIS 119274, at *14.

There is also a strong risk that inquiry into any investigation undertaken by the Attorney General, and those attorneys working on his behalf, will encounter communications shielded by the attorney-client privilege. *See Luck v. McMahon*, 2021 U.S. Dist. LEXIS 177166, at *46-47 (attorney-client privilege can cover both communications seeking legal advice and communications providing facts that are inextricably linked to the giving of legal advice).  The Attorney General represents fifteen defendants in this case.  The Attorney General also provides legal advice and representation to the Department of Correction, including in instances where the advice is related to anticipated litigation.  Questioning of the

Attorney General runs a strong risk of encountering communications protected by attorney-client privilege.

The risk of encountering information or records subject to the deliberative process privilege is also high.   The deliberative process privilege "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (quoting *DOI v. Klathman Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)) (quotation marks omitted).  The privilege is intended to enhance the quality of governmental agency decisions "by protecting open and frank discussion among those who make them within the Government." *Id.* (quoting *Klathman*, 532 U.S. at 8-9) (quotation marks omitted).

The Attorney General is tasked by Conn. Gen. Stat. § 5-141d(b) with providing a defense to state officers or employees for acts or omissions alleged to have occurred while the officer or employee was acting in the discharge of his duties or scope of his employment.   However, the Attorney General is not required to provide a defense for a state officer or employee "whenever the Attorney General, based on his investigation of the facts and circumstances of the case, determines that it would be inappropriate to do so and he notifies the officer [or] employee . . . in writing."  § 5-1421d(b).  The determination of whether to provide a defense to a state officer or employee is a governmental decision and the letter to Padro declining to represent him is the expression of the Attorney General's final decision, not subject to challenge or review.   *See*

24

*Magniafico v. Blumenthal*, 471 F.3d 391 (affording Connecticut Attorney General absolute immunity for § 5-141d(b) determination).  Plaintiffs and Padro have the letter sent to Padro in this case.  What they seek, however, is to delve into the pre-decisional process and records that led to the letter.  Plaintiffs are not entitled to delve into the "recommendations and deliberations" made by or on behalf of the Attorney General and this Court should decline to permit them to do so here. § 3-125 (authorizing Attorney General to use assistant attorneys general to assist in carrying out his duties).  Therefore, the risk of encountering privileged information and records is extremely high and weighs heavily against permitting Plaintiffs to depose the Attorney General.

### 4.    PLAINTIFFS HAVE ENGAGED IN EXTENSIVE DISCOVERY IN THIS CASE.

The fourth factor also weighs against allowing Plaintiffs to depose the Attorney General.  The docket reflects that discovery commenced in 2022 and has been ongoing.  *See, e.g.,* ECF Nos. 66, 67.  Plaintiffs have had the opportunity to depose the defendants in this case as well as other state employees who had first-hand knowledge regarding the claims and defenses in this case.  There is nothing to indicate that Plaintiffs have been preventing from discovering relevant facts in this case.  As reflected in Plaintiffs' letter to undersigned counsel, Ex. B, Plaintiffs have been provided with the records of two investigations of the alleged acts in this case and have video of the incident.  Taking the four *Friedman* factors into consideration, the fact that Plaintiffs disagree with the conclusions reached by the Attorney General based on the facts in this case does not warrant the deposition of him.

25

### D.   THE SUBPOENA IMPOSES AN UNDUE BURDEN ON THE ATTORNEY GENERAL

To the extent that Plaintiffs seek the records and information provided to the Attorney General's Office by parties to the case or other State agencies, and the Court concludes that disclosure of them is not prohibited by the doctrines previously addressed or by privilege, the Court should quash the subpoena because it imposes an undue burden on the Attorney General.  Plaintiffs seeks records and information readily available from the parties to the case or fact witnesses at other State agencies.  The Attorney General should not be required to prepare and participate in a deposition where the information sought is already in the custody of Plaintiffs or is readily available to them from other sources.

"Rule 45(d) mandates that the court for the district where compliance with a subpoena is required quash (or modify) a subpoena issued to a non-party where the court finds, inter alia, that the subpoena imposes an undue burden on the non-party movant. Fed. R. Civ. P. 45(d)(3)(A)(iv)."  *Thomas L. Pearson & Pearson Family Members Found. v. Univ. of Chicago*, Dkt. No. 3:20-mc-00092-CSH, 2021 U.S. Dist. LEXIS 10194, *9-*10 (D. Conn. Jan. 20, 2021) (*Haight, J.*). "Whether a subpoena imposes an undue burden depends on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* at *10 (quoting *Jackson v. AFSCME Local 196*, 246 F.R.D. 410, 412 (D. Conn. 2007)) (quotation marks omitted).

"A court 'give[s] special weight to the burden on non-parties of producing documents to parties involved in litigation.'"  *Id.* (quoting *Travelers Indem. Co. v.*

*Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)).  Indeed, "within this Circuit, courts have held nonparty status to be a significant factor in determining whether discovery is unduly burdensome."  *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) (quotation marks omitted).

Plaintiffs do not allege, because they cannot, that the Attorney General has any first-hand knowledge of the facts and circumstances that are alleged in the Amended Complaint.  Instead, Plaintiffs seek the information that was gathered after the Attorney General received the Complaint as part of his investigation into the claims alleged.  Plaintiffs by their own admission have in their possession "numerous 'investigations' regarding this matter."  Ex. B p.2.  Those include video of the interactions between Talbot and defendants that form the basis for the Amended Complaint.  *Id.*  They possess the investigative reports from both the Department of Correction and the Connecticut State Police.  *Id.* p.3.  They have had the opportunity to depose the defendants in this case and seek written discovery from them.  They also have deposed other fact witnesses from the Department of Correction.

The burden on the Attorney General would be great if he were required to prepare and attend a deposition in this case.  Doing so would interfere with the Attorney General's other duties, which include representing the State and its officers and employees in thousands of pending cases.  Because Plaintiffs have ready access to discovery from the fact witnesses in this case, the burden imposed on the Attorney General far outweighs Plaintiffs' needs in this case.

III.     **CONCLUSION**

      **For the foregoing reasons, this Court should quash Plaintiffs' subpoena of the Attorney General and issue a protective order prohibiting any parties to this case from subpoenaing the Attorney General without permission of the Court.**

                                **SUBPOENAED PERSON**

                                **WILLIAM TONG**
                                **ATTORNEY GENERAL**

**BY:**    **/s/Alma Nunley**
          **Alma Rose Nunley**
          **Assistant Attorney General**
          **Federal Bar No. ct30610**
          **165 Capitol Avenue**
          **Hartford, CT  06106**
          **Tel: (860) 808-5020**
          **Fax: (860) 808-5347**
          **Alma.Nunley@ct.gov**

## **CERTIFICATION**

I hereby certify that on May 11, 2023, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/Alma Nunley_____
**Alma Rose Nunley**
**Assistant Attorney General**

29